UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PRESERVATION COALITION OF ERIE COUNTY,

                    Plaintiff,

      v.                             **DECISION AND ORDER**

FEDERAL TRANSIT ADMINISTRATION, et al.          99-CV-745S

                   Defendants.

## I.  INTRODUCTION

Plaintiff is a prevailing party in this action under the National Historic Preservation Act (NHPA).  Plaintiff has moved for reconsideration, under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, of the Court's June 14, 2005 Judgment relative to its award of attorneys' fees and costs in the underlying litigation, and has also moved for attorneys' fees in connection with Defendants' appeal to the United States Court of Appeals for the Second Circuit under 16 U.S.C. §470w-4.

## II.  BACKGROUND

On June 13, 2001 and February 28, 2002, this Court issued Decision and Orders finding Plaintiff to be a prevailing party under the National Historic Preservation Act ("NHPA") and awarding it attorneys' fees of $131,402.25 and expert witness fees and costs of $35,391.16.  The Defendants sought clarification regarding allocation and, on  May 28, 2002, this Court found Defendants Federal Transit Administration (FTA), Niagara Frontier Transit Authority (NFTA) and New York State Urban Development Corporation, doing business as Empire State Development Corporation (ESDC), jointly and severally liable for

1

the fees and costs awarded.

The FTA, NFTA and ESDC appealed, challenging the determination that Plaintiff was a "prevailing party" under the NHPA and also the determination that the relief obtained by Plaintiff was under the NHPA, rather than the National Environmental Policy Act. Additionally, the NFTA and ESDC argued that they are not federal agencies and, therefore, cannot be held liable under the NHPA.

The Second Circuit affirmed this Court's finding that Plaintiff is a prevailing party under the NHPA, reversed the finding of liability as to the NFTA and ESDC, and remanded this case for a recalculation of attorneys' fees and costs under the fee-shifting provisions of the NHPA as against the FTA. Preservation Coalition of Erie County v. Federal Transit Administration, 356 F.3d 444 (2d Cir. 2004).

In remanding, the Second Circuit directed that the award of fees and costs be limited "to work expended in obtaining the court-ordered Supplemental Environmental Impact Statement ("SEIS")," Id. at 446, and held that Plaintiff "is entitled to recover attorneys' fees and costs under the NHPA fee-shifting provisions for its expenses in obtaining the March 31, 2000 Order of the district court directing [Defendants] to prepare the SEIS," Id. at 455.

Throughout its opinion, the Circuit Court expressly referenced a number of this Court's decisions issued after March 31, 2000—to wit, the May 23, 2000 order compelling discovery (bench ruling), the Stipulation and Order of Discontinuance and Dismissal (Docket No. 68), the initial award of fees and costs (Docket No. 94), the supplemental award of fees and costs (Docket No. 114), and the allocation of fees and costs among Defendants (Docket No. 123), Id. at 449, 455—and then generally referenced all "other

2

rulings subsequent to [the district court's] March 31, 2000 SEIS order," *Id.* at 455.

The Circuit Court held that under <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.</u>, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), Plaintiff is "not entitled to recover the fees and costs associated with obtaining the Stipulation and Order that dismissed the case with prejudice," *Id.* at 451, and Plaintiff is "not entitled to recover expenses for activities after [March 31, 2000], because no court-ordered alteration of the parties' legal relationship resulted from those efforts," *Id.* at 455. The Circuit Court explained that "[t]he district court's May 23, 2000 order compelling discovery (and other rulings subsequent to its March 31, 2000 SEIS order) resulted in the settlement and worked a procedural change between the parties rather than a material alteration of their legal relationship sufficient to warrant attorneys' fees."  In its conclusion, the Circuit Court reiterated that Plaintiff is not "entitled to recover fees as [sic] costs . . . incurred for work subsequent to the court's March 31, 2000 order."  *Id.* at 456.

After receiving the Second Circuit's mandate, this Court recalculated fees and costs and, by Order dated June 2, 2005,[1] reduced the amount previously awarded  Plaintiff to eighty-one thousand four hundred seventy-nine dollars and twenty three cents ($81,479.23) in attorneys' fees and fourteen thousand nine hundred thirty-seven dollars and sixty-two cents ($14,937.62) for expert witness fees and costs.  The recalculated award was based on a March 31, 2000 cut-off date.

---

[1]  The related Judgment was entered on June 14, 2005.

## III.  DISCUSSION

### A.   Motion for Reconsideration

Plaintiff contends that the Second Circuit did not intend to preclude its recovery of attorneys' fees for work performed between March 31, 2000 and April 12, 2000, or for work performed in the preparation and defense of its fee applications in district court.[2] According to Plaintiff, the Second Circuit did not expressly consider whether the Orders relating to those efforts resulted in court-ordered alterations in the parties' legal relationship under Buckhannon and, therefore, fees for that work are outside the scope of its decision. It is Plaintiff's position that this Court misinterpreted the Court of Appeals' mandate regarding the recalculation of fees and overlooked "controlling authority" when it failed, on remand, to engage in a Buckhannon analysis with regard to the at-issue Orders.[3]

Defendant FTA, the Defendant solely responsible for payment of the fee award, argues that this Court's recalculation is consistent with the Second Circuit's decision and no further adjustment is required.

While Plaintiff has characterized his motion as one for reconsideration, it is more appropriately viewed as a motion to alter or amend a judgment.  Plaintiff's motion was filed within 10 days after the entry of the challenged judgment, and so both Rules 59(e) (alteration or amendment of judgment) and 60(b) (relief from judgment based upon

---

[2]  In support of its motion, Plaintiff has submitted a memorandum of law and the affidavits of Francis C. Amendola, Esq. and Richard G. Berger, Esq., with exhibits (Docket No. 130).  Defendant FTA filed a memorandum in opposition to the motion (Docket No. 131).  Plaintiff's reply includes a memorandum and the reply affidavits of Amendola and Berger, with exhibits (Docket No. 134).

[3]  Because the April 12, 2000, June 13, 2001 and February 28, 2002 Orders were not "at-issue" until Plaintiff filed the instant motion, the Court assumes Plaintiff would have this Court, on remand, conduct a Buckhannon analysis with regard to each post-March 2000 Order not expressly analyzed in the Second Circuit's decision.

4

mistake) of the Federal Rules of Civil Procedure are appropriate avenues for his request for relief.  In re Frigitemp Corp., 781 F.2d 324, 327-28 (2d Cir. 1986) (where failure to include award of prejudgment interest was not "mere clerical error," motion to alter judgment could have been brought under either Rule 59(e) or (60(b)); Gey Assocs. Gen. P'ship v. 310 Assocs., 346 F.3d 31, 34-35 (2d Cir. 2003) (Rule 60(b)(1) provides avenue to request that a district court correct legal errors in a judgment).[4]  For the reasons set forth below, this Court is not persuaded that it committed legal error in recalculating the award of fees and costs and Plaintiff's motion to alter or amend the Judgment entered on June 14, 2005 is denied.

It is well-settled that a district court has no authority to depart from a mandate of a United States Court of Appeals.  Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 306, 68 S. Ct. 1039, 92 L. Ed. 1403 (1948); In re Ivan F. Boesky Securities Litig., 957 F.2d 65, 69 (2d Cir.1992).  A mandate includes the certified copy of the appellate court's judgment, the opinion, and any directions as to costs.  United States v. Reyes, 49 F.3d 63, 66 (2d Cir. 1995).  On remand, the district court's actions should be consistent with the express terms and the spirit of the appellate court's mandate.  Quern v. Jordan, 440 U.S. 332, 347 n.18, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979).  However, it is well-settled that this general rule "does not apply to matters left open by the mandate."  Banco National de Cuba v. Farr, 383 F.2d 166, 177 (2d Cir. 1967) (citations omitted), cert. denied, 390 U.S. 956, 88 S. Ct. 1038, 19 L. Ed. 2d 1151 (1968).

---

[4] Here, it is clear that Plaintiff does not challenge the accuracy of this Court's calculation of fees and costs incurred through March 31, 2000; a mistake that likely would be considered clerical.  Rather, it contends that the Court's use of a March 31, 2000 cut-off date in recalculating fees and costs is legal error.

5

In this case, Plaintiff's claimed entitlement[5] to certain of its attorneys' fees for work performed after March 31, 2000 is not a matter "left open" by the Second Circuit's mandate.  The Second Circuit expressly considered whether and when Plaintiff became a "prevailing party" under the NHPA, and also considered the scope of its entitlement to fees under that statute's fee shifting provisions.  The Court unequivocally determined that: 1) the March 31, 2000 court-ordered SEIS made Plaintiff a prevailing party, <u>Preservation Coalition</u>, 356 F.2d at 452; 2) under <u>Buckhannon</u>, Plaintiff is not entitled to recover any expenses for activities or fees for work after that date, *Id*. at 455; and 3) on remand, this Court is to limit its fees and costs award to work expended in obtaining the SEIS, *Id*. at 446.

In light of the mandate's express directives, this Court is not persuaded by Plaintiff's argument that, by discussing the December 18, 2000 Stipulation and Order of Dismissal, *Id*. at 451, the Second Circuit implicitly intended to preclude only the post-March 2000 attorneys' fees attributable to obtaining the stipulation of settlement.  This Court finds it significant that the Second Circuit's opinion specifically notes each of the post-March 2000 Decision and Orders on attorneys' fees and fee allocation.  *Id*. at 449.  In light of the Second Circuit's express acknowledgment of those Orders, this Court must conclude that, had the Court of Appeals intended Plaintiff to recover fees for its fee applications and related litigation, it would have said so.  Moreover, Plaintiff's interpretation of the Second

---

[5]  Plaintiff requests $1,457 for work performed by attorney Amendola and $6,188.25 for work performed by attorney Berger between March 31, 2000 and April 12, 2000.  (Docket No. 130, Amendola Aff., ¶ 22, Berger Aff., ¶ 2).  The amounts requested in connection with Plaintiff's fee applications and the fee allocation disputes are $3,689 for Amendola and $3,190.70 for Berger.  (*Id*., Amendola Aff., ¶ 2, Berger Aff., ¶¶ 3-4).

Circuit's intent is at odds with the Court's express limitation on fees to the time expended in obtaining the SEIS, and its broad conclusion that Plaintiff is not entitled to fees and costs for work subsequent to the March 31, 2000 SEIS Order.

Similarly, this Court rejects Plaintiff's contention that, because the Second Circuit's opinion did not expressly reference or discuss this Court's April 12, 2000 Order, the Court did not consider that Order under <u>Buckhannon</u> and did not intend to preclude attorneys' fees in connection therewith.[6]  This Court has no trouble concluding that the April 12, 2000 Order is included by implication in the Second Circuit's statement that "under <u>Buckhannon</u>, [Plaintiff] is not entitled to recover expenses for . . . the district court's May 23, 2000 order compelling discovery (and other rulings subsequent to its March 31, 2000 SEIS order)." <u>Preservation Coalition</u>, 356 F.2d at 455.

Although well-aware that this outcome involves some tension between the law of this case and the cases cited by Plaintiff awarding attorneys' fees to prevailing parties for fee application preparation and litigation, *see also*, <u>Commissioner, INS v. Jean</u>, 496 U.S. 154, 110 S. Ct. 2316, 110 L. Ed. 2d 134 (1990); <u>Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.</u>, 71 F.3d 1053 (2d Cir. 1995), this Court is bound to follow the express language and spirit of the controlling authority—*i.e.*, the mandate—in this action. Accordingly, Plaintiff's motion to alter or amend the June 14, 2005 Judgment is denied.

**B.     Motion for Attorneys' Fees on Appeal**

Along with its motion to alter or amend the June 14, 2005 Judgment, Plaintiff moves for attorneys' fees, under 16 U.S.C. § 470w-4, for its work in defending Defendants'

---

[6]  This same logic works against Plaintiff with regard to the Orders on fees, costs and allocation, each of which were expressly mentioned in the Second Circuit's opinion.

appellate challenge to its prevailing party status and entitlement to fees under the NHPA fee-shifting provision.  Plaintiff first filed its motion for attorneys' fees with the United States Court of Appeals, which denied the motion on February 11, 2005, without prejudice to its bringing the matter before the district court.  (Amendola Aff., 6/27/05, Ex. B).

Plaintiff claims it is entitled to attorneys' fees for work performed on appeal because it successfully defended the FTA's challenge to its prevailing party status and to the applicability of the NHPA fee-shifting provisions.

The FTA argues that the issues on appeal did not involve the enforcement of the NHPA's provisions and Plaintiff therefore cannot prove it is a "prevailing party" at the appellate stage of the litigation.  Alternatively, the FTA urges that the requested fees should be reduced because Plaintiff's efforts on appeal were largely unsuccessful, the requested fees should be reduced due to the inadequacy of counsels' time entries, and any award should be paid at the rates at which fees were awarded in the underlying litigation.

Plaintiff submitted reply papers addressing most of the FTA's arguments.  Upon the parties submissions, and on consideration of the arguments presented therein and applicable law, Plaintiff's motion for attorneys' fees for its defense of Defendants' appeal is granted for the reasons and in the amount set forth below.

The NHPA fee-shifting provision, 16 U.S.C. § 470w-4, states as follows:

> In any civil action brought in any United States district court by any interested person to enforce the provisions of this Act [16 U.S.C.S. §§ 470 *et seq*.], if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other costs of participating in such action, as the court deems reasonable.

Numerous federal statutes authorize an award of attorney fees to the "prevailing

party."  In Buckhannon, the Supreme Court noted that it has "interpreted these fee shifting provisions consistently."  532 U.S. at 602, n.4.  Thus, decisions interpreting similar fee statutes, such as 42 U.S.C. § 1988, are applicable to a claim for fees under 16 U.S.C. § 470w-4.

The FTA first suggests that the NHPA fee-shifting provision requires the Court to separately consider whether Plaintiff's work on the appeal was directed "to enforc[ing] the provisions of [the NHPA]."  The FTA does not cite any authority in support of its argument that a plaintiff must become a prevailing party within the meaning of the statute at each stage of the litigation before fees can be awarded for that work, nor is such a meaning apparent from a plain reading of the statute.  What is abundantly clear is that the fee-shifting statute is triggered when a plaintiff becomes a prevailing party in an enforcement action brought in a district court.  The Second Circuit has confirmed, and the FTA does not now dispute, that Plaintiff obtained prevailing party status in the underlying litigation.

Moreover, in Commissioner, INS v. Jean, the Supreme Court expressly rejected a very similar argument advanced by the government.  In Jean, the government urged that, when considering an award of fees and costs under the Equal Access to Justice Act, a court should assess the entitlement to fees at each stage of litigation, such as discovery, fee applications or appeals.  496 U.S. at 158-59.  The Supreme Court disagreed, holding that "only one threshold determination for the entire civil action is to be made" and "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."  Id. at 159, 160.  See also, Morris County Trust for Historic Pres. v. Pierce, 730 F.2d 94, 96 (3d Cir. 1983) (where action in the district court is one for which attorneys fees are potentially recoverable under the NHPA, the fee shifting provision

9

"permits the recovery of fees and costs for successful services rendered in a court of appeals, if otherwise reasonable").

It is well-settled that, where a fee-shifting statute is applicable to an action, a prevailing party should ordinarily recover attorneys' fees unless special circumstances would make such an award unjust.  New York Gas Light Club, Inc. v. Carey, 447 U.S. 54, 68, 100 S. Ct. 2024, 64 L. Ed. 2d 723 (1980).  The term "prevailing party" is a generous one, and a plaintiff who succeeds on "'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit'" may be entitled to fees. Roberson v. Giuliani, 346 F.3d 75, 79 (2d Cir. 2003) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Here, Plaintiff sought and obtained relief in the underlying litigation relating to enforcement of the provisions of the NHPA—i.e., the court-ordered SEIS.  That relief was not challenged.[7]  Accordingly, this Court finds that an award of attorneys' fees to Plaintiff for defending the appellate challenge to its prevailing party status is warranted.

However, by prevailing in the underlying litigation, Plaintiff merely crosses the statutory threshold with regard to fees.  Jean, 496 U.S. at 160-61 (quoting Hensley, 461 U.S. at 433).   Once there, important questions remain as to the amount that is reasonable and appropriate.  The amount of the fees is a matter to be determined on the facts of each case.  Hensley, 461 U.S. at 429.

A court begins its analysis by determining the "lodestar amount," which is "'calculated by multiplying the number of hours reasonably expended on the litigation times

---

[7]  On appeal, Defendants did not seek relief from the March 31, 2000 court-ordered SEIS. Rather, they argued that the court-ordered SEIS did not trigger the NHPA's fee-shifting provisions.

a reasonable hourly rate.'"  Quarantino v. Tiffany & Co., 166 F.3d 422, 424 (2d Cir. 1999)

(quoting Blanchard v. Bergeron, 489 U.S. 87, 94, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).

District courts typically perform the following steps in calculating the lodestar: 1)

determine the reasonable hourly rate for each attorney; 2) exclude excessive, redundant

or otherwise unnecessary hours, and 3) exclude hours dedicated to severable,

unsuccessful claims.  Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., 76

Civ. 2125(RWS), 2005 U.S. Dist. LEXIS 5200, at *24 (S.D.N.Y. Mar. 31, 2005) (citations

omitted).  The prevailing party has the burden of establishing the reasonableness of both

the requested rate and the number of hours worked.  Catazano v. Doar, 378 F. Supp. 2d

309,  313 (W.D.N.Y. 2005).

### 1.    The Reasonable Hourly Rate

In its June 13, 2001 Order, this Court held that an hourly rate of one hundred eighty-

five dollars ($185) was a reasonable rate for attorney Berger, and one hundred fifty-five

dollars ($155) a reasonable rate for attorney Amendola, in connection with the underlying

litigation.  Plaintiff now seeks two hundred twenty-five dollars ($225) per hour for Berger

and one hundred sixty dollars ($160) for Amendola for their work on appeal.  The work for

which these attorneys are to be compensated in the underlying litigation ended on March

31, 2000.  The work on appeal was performed between August 4, 2002 and August 31,

2004.

The FTA argues that the rate established in this Court's June 13, 2001 should

control for the remainder of the litigation, no matter how many years that work spans or

how many years after the litigation an award of fees is made.  That position ignores

Supreme Court and Second Circuit authority. <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998) (*quoting* <u>Missouri v. Jenkins</u>, 491 U.S. 274, 284, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)). It has been almost six years since this Court established a reasonable rate in this action and the Court is well-aware that the prevailing rate in this community for similar services by lawyers of reasonably comparable skill, experience and reputation has increased in that time.[8]

In light of the previous award in this case, the time that has passed, and this Court's general knowledge of prevailing rates, an increase of five dollars ($5) per hour for Amendola is eminently reasonable. Similarly, the forty dollar ($40) per hour increase requested by Berger, which would result in the same rate he originally requested in 2001, is not outside the range of prevailing rates for similarly skilled counsel in this community.

### 2.    The Number of Hours Worked

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>Kirsch v. Feet Street, Ltd.</u>, 148 F.ed 149, 173 (2d Cir. 1998) (*citing* <u>Hensley</u>, 461 U.S. at 437 n.12). Hours that are excessive, redundant or otherwise unnecessary should be excluded. <u>Hensley</u>, 461 U.S. at 434.

The FTA complains that Plaintiff's entries for November 27, 2002 through December 15, 2002 relating to contacts with attorney Kryzan, counsel for co-Defendant NFTA, are

---

[8]  This Court does agree with the FTA's position that Plaintiff's counsel could and should have submitted something more than their own affirmations that the requested rates are reasonable. *See* <u>Holmes v. Millcreeek Tp. School Dist.</u>, 205 F.3d 583, 595 (3d Cir. 2000) ("An attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits."). However, the Second Circuit has stated that "a judge may rely in part on [his] own knowledge of private firm hourly rates in the community." <u>Association for Retarded Citizens of Connecticut, Inc. v. Thorne</u>, 68 F.3d 547, 554 (2d Cir. 1995) (quotation and punctuation omitted).

improper because there is no indication that such contacts relate to Plaintiff's claims against the FTA.

The most obvious point to be made here is that Plaintiff was defending against the Defendants' appeal, wherein all Defendants joined in attacking Plaintiff's prevailing party status. The time entries to which FTA refers reflect Plaintiff's contacts with attorney Kryzan for preparation of the appendix and its receipt of attorney Kryzan's brief. Although Plaintiff's counsel clearly could have been more expansive and detailed in their description of the work performed, the FTA has not provided an explanation for its belief that preparation of an appendix or receipt and review of an appellant's brief is unnecessary to client representation on appeal, and this Court is unpersuaded by its objection.

The FTA's further argument that Plaintiff's inadequate and sloppy recordkeeping makes it impossible to separate out the work related to its unsuccessful claims is considered below.

### 3.    Limited Success

In the underlying litigation, one of Plaintiff's principal claims was that Defendants, participants in a joint federal-state development project, had prepared a Final Environmental Impact Statement (FEIS) for the project that did not take into account a historically significant structure. Plaintiff sought an injunction against Defendants until there was full compliance with various environmental and historic preservations laws, and a writ of mandamus requiring preparation of a SEIS. This Court declined to issue an injunction, but found the FEIS inadequate and directed Defendants to prepare a SEIS. Thereafter, this Court determined that Plaintiff was a prevailing party entitled to an award of fees and costs under the NHPA.

Defendants appealed, arguing that under <u>Buckhannon</u>, issuance of the SEIS was not sufficient to confer prevailing party status on Plaintiff.  Plaintiff prevailed on this issue on appeal, although the Second Circuit did direct a recalculation and reduction of the resulting fee award.  The recalculation of attorneys' fees resulted in a reduction of almost 38 percent, from one hundred thirty one thousand, four hundred two dollars and twenty-five cents ($131,402.25) to eighty-one thousand, four hundred seventy nine dollars and twenty-three cents ($81,479.23).[9]  The NFTA and ESDC challenged this Court's finding of joint and several liability, and prevailed on appeal.

The FTA urges that Plaintiff did not substantially prevail on appeal and that any award of fees for appellate work should be reduced accordingly.  Specifically, the FTA notes the fee recalculation and the reversal of this Court's finding of joint and several liability.  The only case the FTA cites in support is <u>Buckhannon</u>.  As already determined above, Plaintiff is not required to establish anew his prevailing party status at each stage of the litigation.

As a matter of public policy, if a private citizen or citizen group is to have the ability to hold a government agency accountable to follow federal laws and regulations, it must have the opportunity to recover the costs incurred in obtaining what, more often than not, will be non-monetary relief.

> This principle applies not only to the cost of obtaining a favorable judgment but also to the cost of successfully defending that judgment, whether against postjudgment motions or against appeal.  A culpable defendant should not be allowed to cause the erosion of fees awarded to the plaintiff for time spent in obtaining the favorable judgment by requiring additional time to be spent

---

[9]  The recalculation also reduced the amount previously awarded for expert witness fees and costs.

thereafter without compensation. Thus, a reasonable fee should be awarded
for opposing the culpable defendant's motion.

Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted).

In this Court's view, Plaintiff successfully defended the appellate challenge to its
prevailing party status and entitlement to fees. The fact that the actual award was reduced
based on reasoning which appears to have been raised by the Second Circuit *sua sponte*
did not in any way impact the validity of the SEIS, Plaintiff's prevailing party status or its
entitlement to invoke NHPA's fee-shifting statute. Similarly, the joint and several liability
issue, while important to the Defendants, had no discernable impact on any of the
determinations favorable to Plaintiff in the underlying litigation. In short, Plaintiff was
successful in preserving all of the favorable legal judgments obtained below and the
lodestar will not be reduced for its purported lack of success.[10]

Plaintiff seeks compensation for 76 hours at $160 per hour for attorney Amendola
and 129.65 hours at $225 per hour for attorney Berger (Docket No. 130, Ex. A), for a total
of forty-one thousand, three hundred thirty-one dollars and twenty-five cents ($41,331.25).
This Court finds that a fee award in that amount is appropriate.

### D.    Fees for the Motion for Fees

Plaintiff is seeking fees for Amendola for 2.9 hours of time spent in preparation of
the instant motion. Amendola has submitted two contradictory time records, one identifying
that time as having been spent on the "motion for reconsideration," and the other
describing the work as involving the "motion for fees." (*Compare* Docket 130, Exs. C and
D). Attorney Berger's affidavit requests fees for 2.5 hours of work in "the preparation of this

---

[10] The FTA does not argue that the overall amount of time spent on the appeal is excessive.

petition for attorney fees," but the work is not documented or described in any contemporaneous time sheet. (Docket No. 130, Berger Aff., ¶ 6). Plaintiff's reply papers include attorney affidavits and time records seeking fees for 13.5 additional hours for Amendola and 6.3 additional hours for Berger for drafting the reply. (Docket No. 134).

Fees should be awarded for time reasonably spent in preparing and defending an application for fees. Weyant, 198 F.3d at 316 (citing Valley Disposal, 71 F.3d at 1059-60; Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183-84 (2d Cir. 1996); Gagne v. Maher, 594 F.2d 336, 343-44 (2d Cir. 1979), aff'd, 448 U.S. 122, 100 S. Ct. 2570, 65 L. Ed. 2d 653 (1980)).   Consideration of a fee application requires the Court to examine contemporaneous billing records, time sheets or other documented, authentic and reliable time records. Murray v. Commissioner of N.Y. Dep't of Educ., 354 F. Supp. 2d 231, 238 (E.D.N.Y. 2005). "'The burden is on counsel [requesting fees] to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required.'" Williamsburg Fair Hsg. Comm., 2005 U.S. Dist. LEXIS 5200, at *25 (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987)). Fee applicants should not:

> "lump" several services or tasks into one time sheet entry because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided. . . . "It is not the court's job to decipher time entries and guess how much time each activity took. . . . It is the responsibility of the applicant to make separate time entries for each activity."

In re Poseidon Pools of America, Inc., 180 B.R. 718, 731 (E.D.N.Y. 1995) (citations omitted).

Although the FTA did not raise any specific objections to Plaintiff's initial request for

16

fees relative to this motion, this Court, which has a duty to review and evaluate Plaintiff's submissions, finds that Plaintiff has not met its burden of presenting records from which it may determine a reasonable fee.   Plaintiff's counsel combined two motions—for reconsideration pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, and for fees for appellate work under 16 U.S.C. § 470w-4—but makes no attempt to account for the amount of work attributable to each.   Moreover, Plaintiff provides no rationale and cites to no authority supporting an entitlement to attorneys' fees for its entirely unsuccessful motion for reconsideration.

This Court finds that Plaintiff is not entitled to the 2.5 hours for attorney Berger that are unsupported by any time records.   After deducting those hours and upon review of the papers presented, it appears that 50 percent of counsels' remaining efforts were directed to its motion for reconsideration as opposed to its fee application.   Time for the former is non-compensable and the lodestar is reduced accordingly.   Thus, this Court finds that Plaintiff is entitled to recover 8.2 hours for Amendola and 3.15 hours for Berger for the preparation and defense of its fee application, in the amount of two thousand, twenty dollars and seventy-five cents ($2,020.75).

## IV.  CONCLUSION

For the reasons stated, this Court finds that Plaintiff is not entitled to recover attorneys' fees and costs in the underlying litigation for any work performed after March 31, 2000.   Plaintiff is entitled to recover its requested attorneys' fees for work performed by attorneys Berger and Amendola in connection with defense of the appeal.   Furthermore, Plaintiff is entitled to recover sufficiently documented attorneys' fees that are reasonably attributable to the preparation and defense of its motion for fees under 16 U.S.C. § 470w-4,

17

as calculated above.

## ORDER

IT HEREBY IS ORDERED that Plaintiff's Motion for Attorneys' Fees (Docket No. 130) is DENIED to the extent that it seeks reconsideration of this Court's Order dated June 2, 2005, and GRANTED to the extent that it seeks attorneys fees for appellate work under 16 U.S.C. § 470w-4.

FURTHER, that the recalculated award of attorneys' fees and costs of ninety-six thousand, four hundred sixteen dollars and eighty-five cents ($96,416.85) for the underlying litigation, as set forth in this Court's June 2, 2005 Order and the related Amended Judgment (Docket Nos. 128 and 129), remains unchanged.

FURTHER, that Plaintiff is entitled to recover additional attorneys' fees and costs as against the Federal Transit Administration for its appellate work and related fee application in the amount of forty-three thousand, three hundred fifty-two dollars ($43,352.00).

FURTHER, that Clerk of the Court is directed to enter an Amended Judgment consistent with this Decision and Order.

SO ORDERED.

Dated:       February 26, 2006
             Buffalo, New York


                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge